IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FEDERAL TRADE COMMISSION,

      Plaintiff,

    v.                                                                          07cv0490
                                                                                        **ELECTRONICALLY FILED**

EQUITABLE RESOURCES, INC, DOMINION
RESOURCES, INC., CONSOLIDATED
NATURAL GAS COMPANY, THE PEOPLES
NATURAL GAS COMPANY,

      Defendants.

**MEMORANDUM OPINION DENYING PLAINTIFF FTC'S MOTION
FOR AN INJUNCTION (DOC. NO. 73)**

**Introduction and background.**

This Court held, on May 14, 2007, that to grant the FTC's motion for a preliminary

injunction (doc. no. 3) "would cause public harm and harm to many other interested parties by

substantially delaying, and for all practical purposes barring the implementation of the PUC's

determination that the transaction is in the public interest." Memorandum Opinion (doc. no. 70),

at 4.  Said proposed injunction would have interfered with and abrogated the statutory duty of the

PUC to protect the interest of the public in Pennsylvania.  Id.

The FTC now comes before the Court seeking an injunction pending appeal pursuant to

Fed.R.Civ.P. 62(c), which places it in the position of requesting the very relief, pending appeal,

that this Court has just decided it is not entitled to receive.  Although Rule 62(c) recognizes that

such apparently anomalous relief may sometimes be appropriate, the party seeking such relief is,

not surprisingly, deemed to bear a very heavy burden of persuasion.  See Fullmer v. Michigan

Dep't. of State Police, 207 F.Supp.2d 663, 664 (E.D. Mich. 2002) (because Rule 62(c) factors for

equitable relief pending appeal are same factors the court considers in deciding whether to grant

a preliminary injunction, an applicant seeking a stay will have more difficulty establishing the

first factor, likelihood of success on the merits, due to the difference in procedural posture; a

party seeking such relief must ordinarily demonstrate to a reviewing court that there is a

likelihood of reversal, not merely the possibility of success on the merits); United States v.

Texas, 523 F.Supp. 703, 723 (D.C.Tex.1981) (since stay of decisions granting equitable relief

pending appeal interrupts ordinary process of judicial review and postpones relief for prevailing

party, stay of equitable order is extraordinary device that should be sparingly granted); Wright

Miller and Kane, 11 Fed. Prac. & Proc. Civ.2d § 2904 (burden of meeting the Rule 62(c)

standard for stays and injunctions pending appeal is a heavy one). The FTC has not met this

heavy burden in this case.

On May 14, 2007, this Court issued a Memorandum Opinion and an Order of Court

(docs. no. 70, 71) dismissing Plaintiff FTC's complaint in equity and its motion for preliminary

injunction on the basis of the state action immunity doctrine, holding as follows:

> This Court grants the Motion to Dismiss (doc no. 18) because the
> PUC's approval of the transaction qualifies for state action immunity.  See
> California Retail Liquor Dealers Association v. Midcal Aluminum, Inc., 445
> U.S. 97 (1980); Parker v. Brown, 317 U.S. 341 (1943).  Further, the granting of
> the requested preliminary injunction would cause public harm by substantially
> delaying, and for all practical purposes barring, the implementation of the
> PUC's determination (PUC Opinion and Order, dated April 13, 2007) that the
> transaction is in the public interest.  Said proposed injunction thus would
> interfere and abrogate the statutory duty of the PUC to protect the interest of
> the public in Pennsylvania.

Memorandum Opinion (doc. no. 71), at 4.

Pending before the Court is the Motion of the Federal Trade Commission for an Injunction Pending Appeal Pursuant to Fed.R.Civ.P. 62(c) or, in the Alternative, an Injunction Pending Resolution by the Court of Appeals of an Emergency Motion for an Injunction (doc. no. 73).  Defendants, Equitable Resources, Inc, Dominion Resources, Inc., Consolidated Natural Gas Company, and the Peoples Natural Gas Company, have filed a response in opposition to the requested injunctive relief pending appeal (doc. no. 75).  For the reasons to follow, the Court will deny the FTC's motion for an injunction pending appeal.

The Court will not recount the factual background at length, as the United States Court of Appeals for the Third Circuit will have this Court's full analysis and recitation before it in due course.[1]  To summarize, the FTC sought preliminary injunctive relief to halt an intra-state merger-acquisition between public utilities who supply gas to residential and commercial customers in Pennsylvania, Peoples Natural Gas Company ("Peoples Gas") by defendant Equitable Resources Inc. ("Equitable Gas").  The proposed merger-acquisition had recently been approved by the Pennsylvania PUC, after substantial and extensive documentation, hearings, and fact findings by Administrative Law Judge John H. Corbett, Jr. (the "ALJ") and by the PUC's subsequent Opinion and Order of April 13, 2007, finding the transaction to be in the public interest after the PUC's studied consideration of a myriad of facts and circumstances surrounding the proposed transaction and its impact upon customers, the utilities, employees and commerce.

As this Court explained:

Pennsylvania has a unique situation in that in a few locales there are two (2)

---

[1] The FTC filed a Notice of Appeal (doc. no. 74) with the Court of Appeals for the Third Circuit on May 16, 2007, and has filed (or intends to file, if its motion in this Court is denied) a motion for injunction pending appeal with the Court of Appeals.

gas distribution systems.  This "gas-on-gas" distribution competition herein permits approximately 500 industrial and commercial customers to negotiate substantially lower prices from the currently separate Equitable Gas and Peoples Gas.  In evaluating and approving the transaction, the PUC found that the benefit of gas-on-gas distribution competition to these 500 customers caused increased prices to the other 600,000 plus customers (primarily retail customers), and in the exercise of the PUC's statutory authority after consideration of a host of statutory considerations, concluded that this limited, and solely intra-state, gas-on-gas distribution competition was inefficient, and that the elimination of said competition through the proposed transaction would produce greater overall efficiencies, eliminate costly duplication, and be in the public interest, including the interest of the 600,000 plus customers who would be impacted.

Memorandum Opinion (doc. no. 70), at 3.

**Standards for Injunctions Pending Appeal.**

Rule 62(c) of the Federal Rules of Civil Procedure provides that, when "an appeal is taken from an interlocutory or final judgment . . . denying an injunction," a court, in its discretion, "may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."   The party seeking an "order suspending, modifying, restoring, or granting an injunction while an appeal is pending" must "ordinarily move first in the district court" for such relief.  Fed.R.A.P. 8(a)(1)(C).

Referring to the rules that "govern the power of district courts and courts of appeals to stay an order pending appeal", the United States Supreme Court in Hilton v. Braunskill, 481 U.S. 770, 776 (1987), listed four factors for courts to consider in deciding whether to issue a stay pending an appeal: (1) whether the applicant for stay has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent the requested relief; (3) whether issuance of the stay will substantially injure the other parties

-4-

interested in the proceeding; and (4) the public interest.  These <u>Hilton</u> factors are, essentially, the familiar four factors considered in deciding whether to grant a preliminary injunction in the first instance, and are equally applicable to a request for stay of a granted injunction pending appeal as to requests for an injunction pending appeal when injunctive relief has been denied by the district court.  See e.g. <u>In re Lewis Jones, Inc.</u>, 369 F.Supp. 111 (E.D.Pa. 1973) ("There are four prerequisites for the issuance of an injunction pending appeal pursuant to Rule 62(c): (1) the moving party must make a strong showing that it is likely to prevail on the merits of its appeal; (2) the moving party must establish that it will suffer irreparable injury if the injunction is denied; (3) other parties must not be substantially harmed if the injunction is issued; and (4) the issuance of the injunction must not be contrary to the public interest.");  <u>Clark v. U.S. Bank Nat'l Ass'n</u>, 2004 WL 2591239, *2 (E.D.Pa. 2004) ("standard for obtaining an injunction pending appeal is identical to the standard for granting a preliminary injunction"), quoting  <u>Walker v. O'Bannon</u>, 487 F.Supp. 1151, 1161 (W.D.Pa.), <u>aff'd</u> 624 F.2d 1092 (3d Cir. 1980) ("factors which the Court must consider on a motion for injunction pending appeal are: '(1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? Without such a substantial indication of probable success, there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review. (2) Has the petitioner shown that without such relief, it will be irreparably injured? . . . (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? (4) Where lies the public interest? . . .' ") (citations omitted).

Moreover, as the FTC notes in its Motion for Injunction at 2, this Court stated in <u>O'Bannon</u> that "[p]roper judgment on this motion entails a balancing of those [<u>Hilton</u>] elements

and no one factor determines the outcome." O'Bannon, 487 F.Supp. at 1161.   The district court

should evaluate and weigh each of the several factors "in light of the individualized

considerations relevant" to the case at hand.  Republic of Philippines v.  Westinghouse Elec.

Corp., 949 F.2d 653, 658 (3d Cir. 1991).

 The Court will analyze the FTC's motion for an injunction in light of these standards:

**Likelihood of Success on Appeal.**

 The FTC asserts that the latter three Hilton factors so greatly favor an injunction pending

appeal that it only need show that its appeal demonstrates a "substantial case on the merits,"

rather than "a probability of success" on the merits.  The Court disagrees with the FTC's basic

premise for application of this lightened standard for obtaining an injunction pending appeal, but

even if the Court applies the more liberal test, the Court finds that the FTC appeal does not

present a substantial case on the merits.

 In granting defendants' Motion to Dismiss (doc. no. 18), this Court reasoned as follows in

its Memorandum Opinion of May 14, 2007 (doc. no. 70).  First, the Court found the application

of the "state action immunity" standard to be "rather straightforward" and not in dispute: "(1)

does the Commonwealth of Pennsylvania have a clearly articulated and affirmative policy of

regulation in place of competition?,  and (2) does the Commonwealth of Pennsylvania actively

supervise that policy?" Memorandum Opinion (doc. no. 70), at 12, citing, among other cases,

California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97, 105 (1980) and

Parker v. Brown, 317 U.S. 341 (1943).

 After reviewing the process by which the Pennsylvania General Assembly adopted and

the Pennsylvania PUC implemented the certification of public convenience/ approval process for

proposed mergers acquisitions and other transactions between public utilities, Memorandum

Opinion (doc. no. 70), at 4-10, the Court found both prongs had been demonstrated. As to the

first prong, the Court found that the General Assembly "articulated and affirmatively expressed a

state policy to displace competition with pervasive regulation . . . by detailed and specific Code

provisions" directing the PUC, in explicit and comprehensive terms, to implement its policies

and to evaluate and review transactions between public utilities on a public interest standard.

Memorandum Opinion (doc. no. 70), at 13.  The Public Utility Code clearly articulated a

"comprehensive and pervasive governmental regulatory scheme" that was intended by the

General Assembly "to take the place of free market competition."  *Id*.

This Court explained in its Memorandum Opinion (doc. no. 70) as follows:

> The General Assembly did not simply give the PUC a blank check or a
> general grant of unfettered authority, with the PUC "writing" the regulations/
> Code provisions  -- on the contrary,  the General Assembly wrote the "Code"
> and its policy determinations are explicitly set forth in the Code.  It is true that,
> in considering whether to approve any "mergers or consolidations involving
> natural gas distribution companies or natural gas suppliers or the acquisition or
> disposition of assets or securities," the PUC must consider whether "the
> proposed merger, consolidation, acquisition or disposition is likely to result in
> anticompetitive or discriminatory conduct, including the unlawful exercise of
> market power, which will prevent retail gas customers from obtaining the
> benefits of a properly functioning and effectively competitive retail natural gas
> market." 66 Pa.C.S. § 2210(a)(1).  However, the fact that the Code and the
> PUC regulatory scheme directs that the PUC evaluate potential anticompetitive
> consequences does not undercut the fact that the General Assembly has
> replaced free market competition with regulation.

> Additionally, Section 2210 charges the PUC with considering the
> "effect of the proposed merger, consolidation, acquisition or disposition on the
> employees of the natural gas distribution company and on any authorized
> collective bargaining agent representing those employees," 66 Pa.C.S. §
> 2210(a)(2), and other provisions of the Natural Gas Choice and Competition
> Act command the PUC to consider a wide range of other factors the General
> Assembly deemed important to its decisions, including "consumer protection"

regarding residential billing practices; the integrity of the distribution systems and reliability of service, which comprises adequacy of supply ("taking into account peak and seasonal demands, as well as isolated market areas and system operation contingencies") and security ("designing, maintaining and operating a system so that it can safely handle extreme conditions as well as emergencies"); ensuring that low-income retail gas customers are able to afford natural gas service; and employee transition concerns and other employee related obligations (i.e., notices regarding lay offs and terminations). 66 Pa.C.S. §§ 2202 - 2207.

The PUC certainly considered the effect of the proposed elimination of gas-on-gas distribution competition in approving the Joint Petition for Settlement, but that was *only one* of the *many* statutory factors considered by the PUC; other factors considered and weighed included job creation and maintaining of the existing work force, the adequacy of the supply of gas if the proposal was approved, the operational practices of the companies involved, enhanced use of Pennsylvania gas, and synergistic cost savings. PUC Opinion and Order of April 13, 2007.

Following the General Assembly's regulatory scheme as mandated by the Code, the PUC ruled herein on an intra-state transaction, in which a few customers will lose the benefits of current competition, but where the public as a whole will benefit, by not subsidizing said "competition," and by receiving the benefits of a more efficient gas distribution systems.

Memorandum Opinion (doc. no. 70), at 13-15 (emphasis added).

As to the second prong of the state action immunity test, the General Assembly also ensured appropriate and active supervision of the state policy by the PUC, see 66 Pa.C.S. §§ 1301, 1302, 1307(f), 1308(d), 1309(a), 1317(c) & (d), 1218(a), (b) & (e), and § 2203 (1), and it is obvious that the PUC takes this responsibility very seriously, in that it conditioned the merger-acquisition on its continued monitoring and supervision of the transaction as it moves forward. That is, following the General Assembly's regulatory scheme expressed by the Code, the PUC "explicitly retained ongoing oversight authority and control over the merged public utilities, and included conditions in its Order approving the proposed transaction" requiring progress reports

by Equitable Gas over various aspects of the transaction and its impact on a variety of corporate,

organizational and individual citizens of the Commonwealth of Pennsylvania. Memorandum

Opinion (doc. no. ), at 16-18, citing PUC Opinion and Order of April 13, 2007 at 85-86.

 As this Court stated in its Conclusion:

> The General Assembly of the Commonwealth of Pennsylvania has clearly articulated, in the Code and the Natural Gas Choice and Competition Act, a policy to disfavor and displace free market competition in favor of a pervasive regulatory scheme, and has endowed the PUC with broad authority to implement its legislative prerogatives and policies, including requiring the PUC to issue certificates of approval for proposed mergers, consolidations, acquisitions or other  dispositions of natural gas distribution companies.  The General Assembly also has directed the PUC to take a very active role in supervising public utilities, including natural gas distribution companies; and in this particular matter, the PUC explicitly retained jurisdiction to continue to actively monitor and review the approved merger transaction.

> The federal antitrust laws are obviously important to the proper functioning of the free market system in this Nation, and so is the role of the FTC, which no doubt has acted zealously and in good faith to further its mandate to enforce those laws.   However, the FTC must defer to the Pennsylvania General Assembly and the PUC which is implementing the Public Utility Code in this case, since the state action immunity doctrine insulates the PUC's approval of the merger between Equitable Gas and Peoples Gas from federal antitrust scrutiny, for the reasons stated above, consistent with the principles of federalism and precedents of the United States Supreme Court and the United States Court of Appeals for the Third Circuit.  The FTC's complaint under antitrust laws against the private actors who have sought and received a certificate of public convenience from the PUC for their merger transaction, therefore, must be dismissed.

Memorandum Opinion (doc. no. 70), at 18-19.

 After reconsideration of the moving papers and briefs, and of the pending motion for an

injunction pending appeal and the response thereto, the Court finds that the FTC cannot

demonstrate a substantial issue on the merits of the state action immunity doctrine.

**Irreparable Injury to Movant.**

The FTC asserts, in conclusory fashion, that if the merger-acquisition goes through and is substantially completed before the Court of Appeals for the Third Circuit hears and resolves its appeal, it will be difficult to "unscramble the eggs" of the merger transaction if, ultimately, the Court of Appeals agrees with its position that the federal antitrust laws have been or will be violated and that the FTC's authority should trump the PUC's authority in this case.

The FTC's assertion is non-specific and does not spell out why or how the merger will be irrevocable, i.e., unable to be divested, and although it appears that the merger-acquisition may be executed between Equitable Gas and Peoples Gas at any time, the PUC must give subsequent approvals down the road before the merger can be integrated.  The FTC has already filed its Notice of Appeal and a motion for injunction pending appeal in that Court, and the Court of Appeals for the Third Circuit is quite capable of moving quickly to resolution of both the motion and the appeal.

The Court will assume that denial of the motion for injunction pending appeal harms the FTC's interests in terms of its ability to assert its authority as the champion of federal antitrust laws, but it has not demonstrated with any specificity that the harm would be irreparable.

**Harm to Other Interested Parties; The Public interest.**

The PUC's Opinion and Order, dated April 13, 2007 discusses all of the private and public interests implicated by the merger throughout, and that discussion shows much overlap exists between the interests of defendants and all the interested parties – of which there were many who have participated in the PUC approval process – and the public interest.  The PUC's 87 page opinion was all about the public interests and the interests of the other interested parties,

and this Court finds it most appropriate to grant Chevron- like deference to the PUC's deliberations and weighing of the private and public interests in the certificate of public convenience/ approval process it so painstakingly undertook.

This Court must note that, although the second prong of the Rule 62(c) standard looks to the harm to the movant, the interests of the movant herein, the FTC, is necessarily a public interest, albeit, from the perspective of the federal antitrust watchdog.  Thus the second prong is not completely separable from the third and fourth prongs, because the FTC ostensibly is acting in what it deems to be in the public interest.  Since the PUC takes the opposite view, after extensive hearings, public comment, evidence taking, argument and briefing, and has found the merger-acquisition to be manifestly in the public interest and in the interest of the majority of interested parties, it is tempting to view the FTC's interest in stopping the merger-acquisition  as, essentially, protection of its administrative "turf."

FTC argues that the public interest review of proposed utility mergers that the legislature has entrusted to the PUC is not in conflict with the policy of the federal antitrust laws.  While this statement may be true on some theoretical level, the real world implications are that the FTC is attempting to stop a transaction which the PUC has found to be in the overall public interest of the citizens of the Commonwealth of Pennsylvania.  In other words, the practical effect of granting the pending Motion for an Injunction (doc. no. 73) would be to grant the FTC's initial request for preliminary injunction to stop the merger transaction which the Pennsylvania PUC has determined is in the public interest.  The FTC has not met its heavy burden of convincing this Court that it should not defer to the Pennsylvania General Assembly and its PUC, and let the approved merger-acquisition transaction take its course.

-11-

**Conclusion.**

Therefore, applying the test for Rule 62(c) injunctions pending appeal, and based upon this Court's analysis in its Memorandum Opinion Granting Defendants' Motion to Dismiss (doc. no. 70), the requested injunction is DENIED, since (a) the FTC is not likely to succeed on the merits of its appeal, (b) there will be not be irreparable harm to the FTC without the injunction, (c) the granting of the injunction would cause harm to the over 600,000 plus customers who, the PUC has determined, will benefit from this merger, and (d) the public interest would be harmed by the granting of the requested injunction.

Finally, the FTC continually and inaccurately labels the merger as "anti-competitive," which it is not. Further, the FTC stated that this Court "suggest[ed]" that "the PUC may permit an anti-competitive merger," which it did not. The merger benefits 600,000 plus customers and may disadvantage approximately 500 customers - - that is not an anti-competitive merger. The FTC is incorrectly stating that this merger would cause "likely and actual consumer harm." Doc. No. 73 at 8. On the contrary, the requested injunction not only would deny significant benefits to these 600,000 plus customers, but as a practical matter, would kill the merger.

For all of the foregoing reasons, the Court will deny the Motion of the Federal Trade Commission for an Injunction Pending Appeal Pursuant to Fed.R.Civ.P. 62(c) or, in the Alternative, an Injunction Pending Resolution by the Court of Appeals of an Emergency Motion for an Injunction (doc. no. 73) by separate order.

**SO ORDERED** this 21st day of May, 2007.

 s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All Registered ECF Counsel and Parties

-12-